IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER ZEGGERT,

       Plaintiff,

3:13-CV-16-PK

OPINION AND
ORDER

v.

SUMMIT STAINLESS STEEL, LLC,

       Defendant.

_____

PAPAK, Magistrate Judge:

      Plaintiff Christopher Zeggert filed this action against defendant Summit Stainless Steel,

LLC ("Summit"), on January 3, 2013.  Zeggert alleges Summit's liability for workers'

compensation discrimination pursuant to Or. Rev. Stat. §§ 659A.040 and 659A.885(3) and for

intentional infliction of emotional distress under Oregon common law.  This court has

Page 1 - OPINION AND ORDER

jurisdiction over Zeggert's action pursuant to 28 U.S.C. § 1332, based on the diversity of the

parties and the amount in controversy.

Now before the court is Zeggert's motion (#13) for disqualification of Summit's *pro hac*

*vice* counsel, Joseph P. Paranac and the other attorneys of the LeClairRyan lawfirm. Zeggert

argues that Paranac and his firm are barred from representing Summit in these proceedings due to

Paranac's purported previous representation of Zeggert in a different but purportedly related

matter, and on the purported ground that Paranac may be called as a witness in this action. For

the reasons set forth below, Zeggert's motion is denied.

## LEGAL STANDARD

"Attorneys admitted *pro hac vice* are held to the same professional responsibilities and

ethical standards as regular counsel. Once admitted, *pro hac vice* counsel cannot be disqualified

under standards and procedures any different or more stringent than those imposed upon regular

members of the district court bar." *Cole v. United States Dist. Court for the Dist. of Idaho*, 366

F.3d 813, 822 (9th Cir. 2004), *quoting United States v. Collins*, 920 F.2d 619, 626 (10th Cir.

1990). The federal courts apply state law in determining matters of attorney disqualification.

*See, e.g., In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (citations omitted).

A motion to disqualify opposing counsel is subject to "particularly strict judicial

scrutiny," due to the significant potential for misuse of state ethical rules for improper tactical

purposes. *Optyl Eyewear Fashion International Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th

Cir. 1985), *quoting Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978). The decision

whether or not to grant a motion for disqualification of counsel is within the discretion of the

district court. *See, e.g., Gas-A-Tron of Arizona v. Union Oil Co.*, 534 F.2d 1322, 1325 (9th Cir.

1976).

## FACTUAL BACKGROUND[1]

Summit employed Zeggert as a warehouse manager from August 14, 2006, through January 4, 2012. In June 2008, Summit employees over whom Zeggert had supervisory authority overheard Zeggert using the racial slur "nigger." One of those employees subsequently advised Summit employee and Zeggert supervisee Eric Hadnot, an African-American, that Zeggert had used that slur in the workplace.

Hadnot complained about the incident to Summit human resources, which conducted an investigation. Zeggert admitted to his use of the racial slur, and Summit issued a warning that such conduct would not be tolerated, and required him to apologize to Hadnot. In addition, Summit issued a company-wide reminder to its employees that the use of such language was contrary to company policy.

In August 2009, Hadnot filed a Bureau of Labor and Industries ("BOLI") complaint against Summit, alleging that Zeggert had harassed and discriminated against him, not just by isolated use of a racial slur but also by intimidating him, expressing racial animus by reference to a noose, and by "countless" uses of the slur "nigger." Zeggert was the only Summit employee regarding whom such accusations were made, and Summit was the sole respondent in the BOLI proceedings. Summit retained attorney Paranac and his lawfirm, LeClairRyan, to represent it in connection with Hadnot's complaint. Paranac prepared Summit's position statement, by and through which he indicated that Zeggert had not intended his use of the slur "nigger" in a

---

[1] Except where otherwise indicated, the facts recited below are undisputed for purposes of the motion now before the court.

"pejorative or derogatory" sense, but rather "as it is used in English vernacular and urban colloquialism." Paranac further indicated that Zeggert's use of the slur was more isolated than Hadnot alleged. In addition, Paranac advised BOLI that Summit had warned Zeggert, required him to apologize, and affirmed its policy against the use of such language in the workplace. Notwithstanding Summit's representations to BOLI, in August 2010 BOLI issued a Notice of Substantial Evidence Determination concluding that Zeggert had engaged in "a pattern of racial harassment towards his subordinates" beginning before the date Hadnot was first hired.

In November 2010, Hadnot filed an additional BOLI charge and initiated a discrimination and retaliation action against Summit in this District. Paranac and the LeClairRyan firm again represented Summit for purposes of Hadnot's claims against it. Hadnot noticed the depositions of three of Summit's employees, including Zeggert. Zeggert and the other Summit employees were advised that Paranac would represent them for purposes of the depositions.

According to Zeggert's sworn declaration testimony, Paranac subsequently called him from his New Jersey offices to tell him that he "would be advising [Zeggert] and representing [Zeggert] at a series of depositions to be conducted at the offices of Mr. Hadnot's attorney in Portland." According to Zeggert's declaration testimony, "[i]n that telephone conversation, [Paranac] advised [Zeggert] of the procedures and purposes of depositions, including [Zeggert's] right to recess the deposition at any time to confer with [Paranac] as [Zeggert's] counsel." Zeggert further declares that he and Paranac "candidly and honestly discussed [Zeggert's] own conduct and . . . concerns about potential liability." Summit offers no evidence to dispute Zeggert's declaration testimony regarding that telephone conversation, although Summit does offer Paranac's clarifying declaration that Paranac "never advised or suggested to [Zeggert] that

[Paranac] was representing him other than for purposes of his deposition in his representative capacity as a supervisory employee of [Summit]."

Paranac later traveled to Oregon to prepare Summit's employees for their depositions. According to Paranac's sworn declaration testimony, "[a]t the outset of meeting with each employee, [he] clearly advised that [he] was counsel for [Summit] in the lawsuit filed by Mr. Hadnot against [Summit]." Paranac further declares that "[a]t no time. . . did [he] advise or even suggest that [he] was acting as personal counsel on behalf of any of [Summit]'s employees, including [Zeggert]." Paranac declares that he "expressly advised [Zeggert] that anything he communicated to [Paranac] may be shared with [Summit]." Paranac declares that "[Zeggert] did not indicate in any way that he did not understand these statements." Zeggert offers no evidence to dispute Paranac's declaration testimony to that effect.

Zeggert declares that he ultimately "spent two days with Mr. Paranac, and revealed all [his] knowledge about the case, [his] own conduct, and the conduct of upper management at Summit to [Paranac]." Paranac does not dispute that testimony, but declares that "[a]t no time during [his] meeting with [Zeggert] did [Zeggert] disclose any fact . . . that was not previously disclosed either during [Summit]'s internal investigation or the BOLI proceedings."

Zeggert further declares that "t]hroughout th[e] period [during which Paranac was preparing him for deposition], [he] believed that Mr. Paranac was acting as [his] attorney and that [his] conversations with [Paranac] were protected by attorney-client privilege." Zeggert declares that "[h]ad [he] believed otherwise, [he] would have obtained counsel for [him]self," apparently notwithstanding the fact that no claims for liability were leveled against him in either the BOLI proceedings or the district court action against Summit. Indeed, Zeggert declares that he "was

not even aware that [he] had not been named as a defendant in [Hadnot's district court action] until . . . February 29, 2012." Zeggert declares that during the time when Paranac was in Oregon to prepare Summit's employees for deposition he "was repeatedly admonished by [Summit] upper management that [he] was not to discuss anything about Mr. Hadnot's claims and [Zeggert's] communications with Mr. Paranac with anyone." Summit offers no evidence to dispute Zeggert's testimony that he subjectively believed that Summit had retained Paranac to represent him individually.

The parties ultimately settled Hadnot's claims against Summit without a trial. Zeggert had not been deposed by the time the parties reached their settlement agreement.

Zeggert filed this action against Summit on January 3, 2013. Zeggert alleges Summit's liability for workers' compensation discrimination and for intentional infliction of emotional distress. Summit asserts various affirmative defenses, none of which implicates matters raised in connection with Hadnot's claims of racial harassment and discrimination.

## ANALYSIS

Zeggert argues that Paranac and the LeClairRyan firm should be disqualified from representing Summit in this matter for two reasons: first, because Paranac purportedly represented Zeggert in connection with Hadnot's claims against Summit (and, impliedly, because Hadnot's action against Summit was substantially related to Zeggert's claims against Summit), and second, because Paranac purportedly may be called as a witness in this action. As noted above, Zeggert's motion is governed by Oregon law.

## I.    Purported Conflict of Interest Premised on Purported Prior Representation

Oregon Professional Conduct Rule 1.9 provides that "[a] lawyer who has formerly

represented a client in a matter shall not thereafter represent another person in the same or a

substantially related matter in which that person's interests are materially adverse to the interests

of the former client unless each affected client gives informed consent, confirmed in writing."

O.R.P.C. 1.9(a). I therefore agree with Zeggert that, if Paranac in fact represented him in

connection with Hadnot's claims against Summit and if Zeggert's action against Summit is in fact

substantially related to Hadnot's prior action against Summit, it would be appropriate to

disqualify Paranac from representing Summit in this matter. However, as the following

discussion reflects, the record now before the court does not suggest that either of those requisite

propositions can be established here.

     The existence of an attorney-client relationship, where (as here) no formal or express

retention agreement exists, "can be inferred from the conduct of the parties." *In re Complaint as*

*to Conduct of Mettler*, 305 Or. 12, 18 (1988), *citing In re Robertson*, 290 Or. 639, 648 (1981).

Here, Zeggler takes the position that he reasonably believed that an attorney-client relationship

was established when Paranac undertook to represent him for purposes of his deposition by

counsel for Hadnot. The Oregon Supreme Court has held that:

> [T]o establish that the lawyer-client relationship exists based on reasonable
> expectation, a putative client's subjective, uncommunicated intention or
> expectation must be accompanied by evidence of objective facts on which a
> reasonable person would rely as supporting existence of that intent; by evidence
> placing the lawyer on notice that the putative client had that intent; by evidence
> that the lawyer shared the client's subjective intention to form the relationship; or
> by evidence that the lawyer acted in a way that would induce a reasonable person
> in the client's position to rely on the lawyer's professional advice. The evidence
> must show that the lawyer understood or should have understood that the
> relationship existed, or acted as though the lawyer was providing professional
> assistance or advice on behalf of the putative client. . . .

*In re Complaint of Weidner*, 310 Or. 757, 770 (1990) (footnote omitted). Paranac's undisputed

testimony that "[a]t the outset of meeting with each employee, [he] clearly advised that [he] was

counsel for [Summit] in the lawsuit filed by Mr. Hadnot against [Summit]," that "[a]t no time. . .

did [he] advise or even suggest that [he] was acting as personal counsel on behalf of any of

[Summit]'s employees, including [Zeggert]," and that he "expressly advised [Zeggert] that

anything he communicated to [Paranac] may be shared with [Summit]"  is sufficient to establish

the absence of any of the factors set forth in *Weidner* as requisite to establishing the existence of

an attorney-client relationship on the basis of the putative client's reasonable expectations.

Because no attorney-client relationship was created, Paranac did not represent Zeggert in the

Hadnot matter, and no conflict of interest has been established.

Moreover, on the *arguendo* assumption that such a relationship had been created, nothing

in the record before the court suggests that Hadnot's prior action and Zeggert's current action

were substantially related.  For purposes of Rule 1.9:

> matters are "substantially related" if (1) the lawyer's representation of the current
> client will injure or damage the former client in connection with the same
> transaction or legal dispute in which the lawyer previously represented the former
> client; or (2) there is a substantial risk that confidential factual information as
> would normally have been obtained in the prior representation of the former client
> would materially advance the current client's position in the subsequent matter.

O.R.P.C. 1.9(d).  There is no indication that Paranac's representation of Summit in the matter

now before the court could harm Zeggert in connection with the Hadnot matter, which has been

finally settled, that Zeggert ever provided Paranac with confidential information not already

known to Summit, or that any information obtained by Paranac in connection with Hadnot's

claims would in any sense advance Summit's position in connection with Zeggert's current

claims.  Indeed, there appears to be little substantial overlap in the legal or factual issues raised

by Hadnot's claims with those raised by Zeggert's claims.

Because the record does not support Zeggert's theory that Paranac previously represented him (and because the record likewise does not support Zeggert's implied theory that his claims against Summit are substantially related to Hadnot's prior claims), Zeggert's motion is denied to the extent premised on a theory of prior representation.

## II.    Purported Conflict of Interest Premised on Purported Possibility that Paranac will be Called as a Witness in these Proceedings

The situation in which a party's counsel may be called as a witness on that party's behalf is governed by Oregon Professional Conduct Rule 3.7. Rule 3.7 provides as follows:

(a)    A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a witness on behalf of the lawyer's client unless:

    (1)    the testimony relates to an uncontested issue;

    (2)    the testimony relates to the nature and value of legal services rendered in the case;

    (3)    disqualification of the lawyer would work a substantial hardship on the client; or

    (4)    the lawyer is appearing *pro se.*

(b)    A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness on behalf of the lawyer's client.

(c)    If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a member of the lawyer's firm may be called as a witness other than on behalf of the lawyer's client, the lawyer may continue the representation until it is apparent that the lawyer's or firm member's testimony is or may be prejudicial to the lawyer's client.

O.R.P.C. 3.7.

Page 9 - OPINION AND ORDER

As discussed above, the record before the court does not suggest any substantial overlap in the legal or factual issues raised by Hadnot's claims with those raised by Zeggert's claims. Neither Zeggert's claims against Summit nor Summit's asserted affirmative defenses suggest that any question as to which Paranac could be called as a fact witness will arise in this action. In consequence, there does not appear to be any substantial likelihood that Paranac would be called to testify in these proceedings. Zeggert's motion is therefore denied to the extent premised on the purported possibility that Paranac will be called as a witness in these proceedings.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion (#13) to disqualify *pro hac vice* counsel is denied. Such denial is without prejudice to Zeggert's right to file a similar motion at a later stage of these proceedings should he obtain new, substantial evidence of a conflict of interest that would merit disqualification under the legal framework discussed above.

Dated this 24th day of June, 2013,

Honorable Paul Papak
United States Magistrate Judge